YALDO v NORTH POINTE INSURANCE COMPANY

Docket No. 107032. Argued December 10, 1997 (Calendar No. 7). Decided May 19, 1998.

Isam Yaldo brought an action in the Wayne Circuit Court against North Pointe Insurance Company, seeking payment under a lender's loss payable clause for damages incurred following a fire. The court, Kaye Tertzag, J., entered judgment for the plaintiff. Thereafter, the court granted the plaintiff's motion to determine the rate of interest on the judgment, awarding interest at the rate of twelve percent, compounded annually, as provided in MCL 600.6013(5); MSA 27A.6013(5). The Court of Appeals, CAVANAGH, P.J., and HOOD and J. J. MCDONALD, JJ., affirmed in an opinion per curiam (Docket No. 184105). The insurer appeals.

In an opinion by Justice KELLY, joined by Chief Justice MALLETT, and Justices BRICKLEY and CAVANAGH, the Supreme Court *held*:

The language of MCL 600.6013; MSA 27A.6013 is clear and unambiguous. The lower courts properly found that the insurance contract in this case was a "written instrument" and, thus, that subsection 5, not subsection 6, is controlling.

1. Under MCL 600.6013; MSA 27A.6013, if an insurance policy is a "written instrument," subsection 5 is applicable, and a plaintiff is entitled to twelve percent interest compounded annually. If an insurance policy is not a "written instrument," then subsection 6 is applicable, and a plaintiff is entitled to a lower rate of interest. While the Legislature did not define the term "written instrument" when it enacted MCL 600.6013; MSA 27A.6013, nevertheless, the expression is clear and unambiguous and may encompass an insurance policy. The language of the statute should not be rewritten to effectively limit "written instrument" to "negotiable instrument." Further, Michigan Courts historically have interchanged the term "written instrument" with "written contract" and "insurance contract."

2. MCL 500.2006(4); MSA 24.12006(4) allows an insured to recover twelve percent interest from an insurer where no complaint has been filed to force payment. It applies when an insurance company is dilatory in making timely payments to an insured; its purpose is to punish the insurance company. Merely because,

under some circumstances, the two statutes overlap does not require a change in the clear and unambiguous language of MCL 600.6013(5); MSA 27A.6013(5). Clearly, the plaintiff, in seeking reimbursement for the loss of his business because of a fire, could have filed a claim under MCL 500.2006(4); MSA 24.12006(4), and, thus, could have recovered interest at the rate of twelve percent.

3. The defendant has not met its burden of demonstrating that including insurance policies within the definition of "written instrument" violates equal protection. The purpose of MCL 600.6013; MSA 27A.6013 is to compensate a claimant for delays in recovering money damages, and the Legislature's choice to impose a higher rate of interest on defendants who enter into written contracts is not arbitrary. There is a distinction between contract claims and tort claims. Tort claimants often do not have a preexisting relationship with their tortfeasors, whereas there is a preexisting relationship between two parties who have signed a written contract. Greater expectations regarding performance and payments are likely to exist when the parties have established their rights and responsibilities before a controversy arises. While so great a distinction is not found between written contracts and oral contracts, nevertheless, there is a greater degree of certainty when a written contract is involved.

Affirmed.

Justice TAYLOR, joined by Justices BOYLE and WEAVER, dissenting, stated that the plain language of MCL 600.6013(5); MSA 27A.6013(5), as properly understood, contemplates only that instruments bearing a rate of interest qualify for the twelve percent interest rate available under that subsection. Because the insurance contract at issue did not bear a rate of interest, judgment interest should be limited to that specified under MCL 600.6013(6); MSA 27A.6013(6).

217 Mich App 617; 552 NW2d 657 (1996) affirmed.

*Sommers, Schwartz, Silver & Schwartz, P.C.* (by *Carl B. Downing*), and *Weinbaum & Abbo, P.C.* (by *Peter Abbo*), for the plaintiff-appellee.

*Klemanski & Honeyman, P.C.* (by *John D. Honeyman*), for the defendant-appellant.

Amicus Curiae:

*Kallas & Henk, P.C.* (by *Constantine N. Kallas*), for Michigan Association of Insurance Companies.

KELLY, J. In this case, we are asked to determine the applicable rate of interest on a judgment for plaintiff because of defendant's failure to pay plaintiff's claim under an insurance contract. We hold that the lower courts properly found that subsection 5 not subsection 6 of MCL 600.6013; MSA 27A.6013 is controlling. Therefore, we affirm the award of twelve percent interest to plaintiff.

I

In 1988, plaintiff sold his business, the New Inkster Market, to Kanouno Enterprises, Inc. Kanouno signed a land contract and executed a promissory note and security agreement. An insurance policy was issued, identifying the buyer as the named insured and designating plaintiff under a lender's loss payable clause. In 1990, Kanouno defaulted on the land contract. Approximately one month later, the market burned.

Plaintiff filed a claim with defendant under the lender's loss payable clause. When defendant refused to pay, plaintiff filed suit. The Wayne Circuit Court entered judgment in plaintiff's favor in 1992 in the amount of $176,750.

Following unsuccessful appeals by defendant, plaintiff brought a motion to determine the rate of interest on the judgment. Plaintiff contended that the proper rate was twelve percent, compounded annually, as provided by MCL 600.6013(5); MSA 27A.6013(5). Defendant countered by asserting that the proper rate of interest ranged between six and

seven percent pursuant to MCL 600.6013(6); MSA
27A.6013(6).

The trial court agreed with plaintiff and awarded
interest at the rate of twelve percent compounded
annually as provided in MCL 600.6013(5); MSA
27A.6013(5). The Court of Appeals affirmed the trial
court's order. 217 Mich App 617; 552 NW2d 657
(1996). We granted defendant's application for leave
to appeal. 455 Mich 868 (1997).

II

A

The issue before us is whether subsection 5 or sub-
section 6 of MCL 600.6013; MSA 27A.6013 applies for
the purpose of computing interest on the judgment.
Because we are making a statutory interpretation, we
review the issue de novo as a question of law. *Cardi-
nal Mooney High School v Michigan High School
Athletic Ass'n*, 437 Mich 75, 80; 467 NW2d 21 (1991).
Subsection 5 provides:

> For complaints filed on or after January 1, 1987, if a
> judgment is rendered on a *written instrument*, interest
> shall be calculated from the date of filing the complaint to
> the date of satisfaction of the judgment at the rate of 12%
> per year compounded annually, unless the instrument has a
> higher rate of interest. In that case interest shall be calcu-
> lated at the rate specified in the instrument if the rate was
> legal at the time the instrument was executed. The rate
> shall not exceed 13% per year compounded annually after
> the date judgment is entered. [MCL 600.6013(5); MSA
> 27A.6013(5) (emphasis added).]

On the other hand, subsection 6 provides:

> Except as otherwise provided in subsection (5) and sub-
> ject to subsection (11), for complaints filed on or after Jan-

uary 1, 1987, interest on a money judgment recovered in a civil action shall be calculated at 6-month intervals from the date of filing the complaint at a rate of interest that is equal to 1% plus the average interest rate paid at auctions of 5-year United States treasury notes during the 6 months immediately preceding July 1 and January 1, as certified by the state treasurer, and compounded annually, pursuant to this section. Interest under this subsection shall be calculated on the entire amount of the money judgment, including attorney fees and other costs. However, the amount of interest attributable to that part of the money judgment from which attorney fees are paid shall be retained by the plaintiff, and not paid to the plaintiff's attorney. [MCL 600.6013(6); MSA 27A.6013(6).]

Therefore, if an insurance policy is a "written instrument," subsection 5 is applicable, and plaintiff is entitled to twelve percent interest compounded annually. If an insurance policy is not a "written instrument," then subsection 6 is applicable, and plaintiff is entitled to a lower rate of interest.

Defendant argues that "written instrument" must be defined as a writing that expressly contains a rate of interest, such as a negotiable instrument. Allegedly, defendant's definition alone gives meaning to the language of subsection 5 that states: "unless the instrument has a higher rate of interest." Plaintiff counters by arguing that all written contracts, including insurance policies, fall within the definition of "written instrument." The subsection 5 language referred to by defendant applies only in the event that the written instrument in question contains a rate of interest, and it is higher than twelve percent.

In order to reach a conclusion, we must determine whether the Legislature intended to include insurance policies within the definition of "written instrument."

The primary goal of judicial interpretation of statutes is to give effect to the intent of the Legislature. *Farrington v Total Petroleum, Inc*, 442 Mich 201, 212; 501 NW2d 76 (1993). In determining legislative intent, we look first at the words of the statute. If the language is clear and unambiguous, judicial construction is not normally permitted. If reasonable minds can differ regarding its meaning, then judicial construction is appropriate. *Indenbaum v Michigan Bd of Medicine (After Remand)*, 213 Mich App 263; 539 NW2d 574 (1995). The Legislature is presumed to have intended the meaning it plainly expressed. *Id.*

We note that the Legislature did not define the term "written instrument" when it enacted MCL 600.6013; MSA 27A.6013. Nevertheless, we find the expression clear and unambiguous. An insurance policy is a written instrument. We refuse to rewrite the language of the statute effectively to limit "written instrument" to "negotiable instrument." The expression "negotiable instrument" is well known and is used throughout the Uniform Commercial Code. Had the Legislature intended to restrict the applicability of subsection 5 to negotiable instruments or instruments containing a rate of interest, it could easily have used such terminology. Moreover, the language in subsection 5 cited by defendant merely recognizes that parties may write into their contracts their own terms relating to interest. If the parties choose to set no rate or to set a rate within legal limits higher than twelve percent, they are free to do it.

We note that Michigan Courts have interchanged the term "written instrument" with "written contract" and "insurance contract." For example, in *Bowen v*

*Prudential Ins Co of America*,[1] this Court stated: "A policy of insurance is the formal, written instrument in which a contract of insurance is embodied . . . ."[2] Because Michigan Courts have a history of referring to insurance policies as written instruments, we are not prepared to change the clear and unambiguous term in subsection 5.[3]

B

Defendant argues that including insurance policies under the definition of "written instrument" would nullify MCL 500.2006(4); MSA 24.12006(4) of the Uniform Trade Practices Act. It provides:

When benefits are not paid on a timely basis the benefits paid shall bear simple interest from a date 60 days after satisfactory proof of loss was received by the insurer at the rate of 12% per annum, if the claimant is the insured or an individual or entity directly entitled to benefits under the insured's contract of insurance. Where the claimant is a third party tort claimant, then the benefits paid shall bear interest from a date 60 days after satisfactory proof of loss was received by the insurer at the rate of 12% per annum if the liability of the insurer for the claim is not reasonably in dispute and the insurer has refused payment in bad faith, such bad faith having been determined by a court of law. . . . Interest paid pursuant to this section shall be off-

---

[1] 178 Mich 63, 70; 144 NW 543 (1913).

[2] See, also, *Wells v Prudential Ins Co of America*, 239 Mich 92, 96; 214 NW 308 (1927); *Star Steel Supply Co v United States Fidelity & Guaranty Co*, 186 Mich App 475, 482; 465 NW2d 17 (1990) (McDONALD, J., dissenting).

[3] We decline to rely on the UCC for guidance regarding the meaning of "written instrument." We agree with the Court of Appeals that the UCC is distinguishable, because it does not address the same subject matter as MCL 600.6013; MSA 27A.6013. Also, the latter does not make reference to the UCC for definitional guidelines.

set by any award of interest that is payable by the insurer
pursuant to the award.

We do not agree with defendant that our interpretation of MCL 600.6013(5); MSA 27A.6013(5) nullifies this provision. We acknowledge that, under some circumstances, there will be an overlap in the statutes. However, MCL 500.2006(4); MSA 24.12006(4) allows an insured to recover twelve percent interest from its insurer where no complaint has been filed to force payment. It applies when the insurance company is dilatory in making timely payments to the insured. Its purpose is to punish the insurance company. See *McCahill v Commercial Union Ins Co*, 179 Mich App 761; 446 NW2d 579 (1989). Merely because, under some circumstances, the two statutes overlap does not mean that we must change the clear and unambiguous language of MCL 600.6013(5); MSA 27A.6013(5).[4]

C

Defendant asserts that the Court of Appeals erred when it stated that, even if subsection 5 did not apply, twelve percent could have been awarded pursuant to MCL 500.2006(4); MSA 24.12006(4). Under the Uniform Trade Practices Act, defendant reasons, twelve percent interest can be awarded only when the claim is not reasonably in dispute.

---

[4] Defendant's claim that our holding would negate the "reasonably in dispute" language of MCL 500.2006(4); MSA 24.12006(4) is based on a misreading of the statute. Its express terms indicate that the language applies only to third-party tort claimants. Where the action is based solely on contract, the insurance company can be penalized with twelve percent interest, even if the claim is reasonably in dispute.

We find that defendant misreads the Uniform Trade Practices Act. Clearly, plaintiff could have filed a claim under MCL 500.2006(4); MSA 24.12006(4). With respect to collection of twelve percent interest, reasonable dispute is applicable only when the claimant is a third-party tort claimant. Here, plaintiff is not such a claimant. Rather, he is seeking reimbursement for the loss of his business due to a fire. Therefore, plaintiff could have recovered interest at the rate of twelve percent per annum under the Uniform Trade Practices Act.

III

Finally, defendant argues, to include insurance policies within the definition of "written instrument" is to violate the company's right to equal protection. Defendant asserts that it imposes a heavier penalty upon written contracts than upon oral contracts or tort defendants. Allegedly, no legitimate governmental interest is served by the distinction.

Defendant is not a member of a protected class, nor are fundamental rights involved. Therefore, defendant's equal protection claim is reviewed using a rational basis test. *Michigan State AFL-CIO v MERC*, 453 Mich 362, 381; 551 NW2d 165 (1996) (BRICKLEY, C.J.). Under that test, the challenged statute will be upheld if it furthers a legitimate governmental interest and if the classification is rationally related to achieving the interest. *Id.*; *Shavers v Attorney General*, 402 Mich 554, 618; 267 NW2d 72 (1978). Defendant has the burden of demonstrating that the classification is arbitrary and irrational, given the objective of the statute. *Smith v Employment Security Comm*, 410 Mich 231, 271; 301 NW2d 285 (1981).

We find that defendant has not met its burden. The purpose of MCL 600.6013; MSA 27A.6013 is to compensate the claimant for delays in recovering money damages. *McCahill, supra*. The Legislature's choice to impose a higher rate of interest on defendants who enter into written contracts is not arbitrary. First, there is a distinction between contract claims and tort claims. Tort claimants often do not have a pre-existing relationship with their tortfeasors. On the other hand, there is a preexisting relationship between two parties who have signed a written contract. Greater expectations regarding performance and payments are likely to exist when the parties have established their rights and responsibilities before a controversy arises.

While so great a distinction is not found between written contracts and oral contracts, there is nevertheless a greater degree of certainty when a written contract is involved. It would be logical for the Legislature to impose a higher interest rate for written instruments. Defendant's argument is especially weak in light of MCL 500.2006(4); MSA 24.12006(4), which provides for a twelve percent interest rate when an insurance company does not pay a claim on a timely basis.

IV

We conclude that the language of MCL 600.6013(5); MSA 27A.6013(5) is clear and unambiguous. The lower courts properly found that the insurance contract in this case was a "written instrument." Therefore, we affirm the award of twelve percent interest on the judgment.

MALLETT, C.J., and BRICKLEY and CAVANAGH, JJ., concurred with KELLY, J.

TAYLOR, J. (*dissenting*). The facts of this case are simple. Plaintiff was a land contract vendor. The land contract vendee took out an insurance policy with defendant that protected plaintiff in case of fire. The building burned down. Plaintiff brought an action against defendant and was awarded $176,750. The parties dispute the amount of judgment interest owed by defendant. The trial court awarded judgment interest pursuant to MCL 600.6013(5); MSA 27A.6013(5) on the basis that the insurance contract was a "written instrument." Under this subsection, judgment interest is calculated at the rate of twelve percent. The Court of Appeals affirmed.

Defendant argues that the insurance contract is not a "written instrument," as contemplated by subsection 6013(5), and, therefore, interest should be calculated pursuant to MCL 600.6013(6); MSA 27A.6013(6), the basic judgment interest statute that covers all actions not falling under subsection 6013(5). The majority affirms the decision of the Court of Appeals, relying simply on the notion that the insurance contract was "written" and qualified as an "instrument" as that term is generally defined. I disagree with this conclusion and the analysis used to reach it.

This case presents a situation in which we must consider the purpose behind the enactment of the basic judgment interest statute, MCL 600.6013; MSA 27A.6013, and the subsequent version of it with which we currently are involved in our interpretive task. If one does this, I think the result reached by the majority is untenable.

In 1961, the first of the legislative actions took place with which we are concerned. The statute stated:

> Execution may be levied for interest on any money judgment recovered in a civil action, such interest to be calculated from the date of judgment at the rate of 5% per year unless the judgment is rendered on a written instrument having a higher rate of interest in which case interest shall be computed at the rate specified in the instrument if such rate was legal at the time the instrument was executed. In no case shall the rate exceed 7% per year. [1961 PA 236, MCL 600.6013; MSA 27A.6013.]

As is obvious, the statute provided that judgments in civil actions would be awarded interest at five percent with one exception, that one exception being that judgments on written instruments having a higher rate of interest would be awarded interest at the rate specified on the instrument, capped at seven percent.

Clearly the purpose of the exception was to preclude debtors with an instrument bearing a rate greater than five percent from benefiting from a default. A simple example makes this clear. Consider the statute without the exception: A debtor owing the plaintiff money on a note bearing seven percent interest would be better off defaulting and paying only the five percent interest applicable to civil judgments. That being the case, the debtor might well do so, thus depriving the creditor of the two percent interest benefit for which he had contracted. The statutory exception, however, brought this prospect to a halt by taking such transactions (and no others) out of the general judgment interest system.

In 1965, 1966, and 1972 there were minor changes to the statute[1] (primarily changing the interest rate from five percent to six percent), but none of these amendments changed the exception for written instruments having a rate of interest. In the late 1970s, however, in response to rising inflation with its inevitable upward push on interest rates, the statute became a vehicle for misuse by defendants who had financial incentives to delay resolution of cases because of the float they got on the difference between the market rate and the six percent they would eventually have to pay under the judgment interest statute.[2]

To address this, 1980 PA 134, amending § 6013, changed the six percent rate to twelve percent. In doing so, the enactment retained the same general scheme as its predecessor, i.e., there remained one judgment interest rate for all civil judgments and one exception for written instruments bearing an interest rate. This new version of the statute complicated the statutory structure somewhat by adding several sections to ensure that the new statutory interest rate was not afforded retroactive effect. However, the general scheme, i.e., one general interest rate for judg-

---

[1] Pursuant to 1965 PA 240 the Legislature changed the date at which interest would accrue and added a sentence cutting off interest if the defendant in a tort case made a good-faith offer of settlement that was substantially identical or more favorable to the plaintiff than the judgment. 1966 PA 276 made a small change, altering the first sentence to read: "Interest shall be allowed . . . ." 1972 PA 135 changed the base interest rate from five percent to six percent.

[2] For example, while in 1975 the average one-year T-Bill rate was 6.28%, by 1979 that rate had risen to 9.75% and continued to rise, the average rate being 10.89% in 1980 and 13.14% in 1981. See United States Bureau of the Census, *Statistical Abstract of the United States, 1990* (110th ed) (Washington, DC: United States Government Printing Office), p 508.

ments with one exception for judgments on instruments bearing an interest rate clearly remained the rule. In particular the statute said:

> For complaints filed on or after June 1, 1980, interest shall be calculated from the date of filing the complaint to the date of satisfaction of the judgment at the rate of 12% per year compounded annually unless the judgment is rendered on a written instrument having a higher rate of interest. In that case interest shall be calculated at the rate specified in the instrument if the rate was legal at the time the instrument was executed. The rate shall not exceed 13% per year compounded annually after the date judgment is entered. [1980 PA 134, MCL 600.6013(4); MSA 27A.6013(4).]

Later in the 1980s, as tort reform became a topic of interest in the Legislature, the Legislature amended the judgment interest section again in 1986. Again, the problem addressed was that the fixed rate (twelve percent), because of interest rate fluctuations in the market,[3] was producing unjust results. To address this, and obviate the need to continually amend the statute on the basis of current market interest rates, the Legislature set the judgment interest rate at one percent plus the average interest rate paid at auctions of five-year United States treasury notes (popularly described as T-Bill plus 1) during the relevant period. In this process, however, the Legislature inexplicably failed to retain the exception for interest-bearing instruments on actions filed on or after January 1, 1987. 1986 PA 178, MCL 600.6013(5); MSA 27A.6013(5).

---

[3] By 1986 the average one-year T-Bill rate had fallen back to 6.08%. See *Statistical Abstract of the United States, 1990*, n 2 *supra* at 508.

In reaction to this omission, the Legislature amended the statute again the following year, reinstating the exception to the general judgment interest rate for written instruments bearing interest. I believe the history of this statute and its amendments, as well as the harmonious language of these various enactments, with the exception of the quickly corrected statute in 1986, demonstrates that the Legislature wanted to address the complications created by written instruments bearing interest under the basic judgment interest statute. Thus, the history[4] precipitating the 1987 amendment that animated the Legislature leads to the conclusion that the higher interest rate was meant to be applied only to instruments bearing a rate of interest. See *Stajos v City of Lansing*, 221 Mich App 223, 234; 561 NW2d 116 (1997), *Preston v Browder*, 14 US (1 Wheat) 115, 121; 4 L Ed 50 (1816) (noting that preceding and contemporaneous events provide a factual context giving meaning to the statute at issue).

The majority apparently believes that the plain language of the statute, even if it were considering the factual background that led to the legislative actions discussed above, does not effectuate the Legislature's goal, and, therefore, the Court is compelled to conclude that subsection 5 applies to *any* written instrument whether it is an interest bearing instrument or

---

[4] This is indeed a "history" because we make reference here to contemporaneous events that resulted in legislative action. This history of the period can safely be used as a guide to the intent of the Legislature. To be noted is that this reliability is missing when staff-developed legislative analyses, reports of a legislative committee, or the like, which are all only opinions of the authors of the reports regarding the intent of the Legislature, are considered as actual and conclusive expressions of legislative intent.

not. However, properly understood, the words of this statute do not lead to the majority's conclusion, but, rather, to the same result as the historical analysis compels.

To understand this, it is essential to begin by recalling exactly what subsection 5 says:

> For complaints filed on or after January 1, 1987, if a judgment is rendered on a written instrument, interest shall be calculated . . . at the rate of 12% per year . . . *unless the instrument has a higher rate of interest.* In that case the interest shall be calculated at the *rate specified in the instrument* if the rate was legal at the time the instrument was executed.

I believe that "written instrument" when first used in this passage means a written instrument bearing a rate of interest, because it is unmistakably referring to the instruments later discussed in this subsection that, importantly, are uniformly instruments with an interest rate of some sort. Unlike the majority, I do not believe that, under the rules of statutory construction, a failure to use the modifying phrase "bearing a rate of interest" each time after the words "written instrument" must necessarily mean we simply pull "written instrument" out of context and go to a dictionary for the definitions of "written" and "instrument" to determine the scope and meaning of the words at issue. The reason is that the phrase "written instrument" should be seen as a phrase of art within the confines of this text. Given that status, it is not appropriate to simply rely on a general lay definition of the words at issue. Indeed, the Legislature has directed how we should handle situations of this kind when words have unique meanings. MCL 8.3a; MSA

2.212(1) says: "[T]echnical words and phrases, and such as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning." Accordingly, as we apply this "phrase of art" rule in such easy cases as when terms like "costs" or "attorney fees" are used in statutes,[5] we also should use it here in this more difficult case because the context of the statute directs us to use this tool of statutory construction.

Further, two other applicable doctrines of statutory construction support this reading of the text. First, the doctrine of *noscitur a sociis* ("[i]t is known from its associates") gives us assistance. Black's Law Dictionary (6th ed), p 1060. This is the principle that a word or phrase is given meaning by its context or setting. Cf. *State ex rel Wayne Co Prosecutor v Diversified Theatrical Corp*, 396 Mich 244, 249; 240 NW2d 460 (1976). With that in mind, focusing on subsection 5, the statutory language "unless the instrument has a higher rate of interest" contemplates that all "instruments" have an interest rate of some sort. Similarly the reference to "interest shall be calculated at the rate specified in the instrument" later in the same subsection leads to the same conclusion. Second, *lapsus linguae* is a canon of construction meaning literally "slip of the tongue." It applies where the face of a statute makes it clear to the reader that a mistake of expression, rather than one of legislative wisdom, has been made. See Scalia, *A Matter of Interpretation* (Princeton, New Jersey: Princeton University Press,

---

[5] See *Attorney General v Piller (After Remand)*, 204 Mich App 228; 514 NW2d 210 (1994), and *Macomb Co Taxpayers Ass'n v L'Anse Creuse Public Schools*, 455 Mich 1, 8-10; 564 NW2d 457 (1997).

1997), p 20; cf. *Green v Bock Laundry Machine Co*,
490 US 504, 527; 109 S Ct 1981; 104 L Ed 2d 557
(1989) (Scalia, J., concurring in the judgment). This
doctrine demonstrates that the fact that the statute
does not specifically modify "written instrument" with
the phrase "bearing a rate of interest" is not determi-
native. It is helpful here because the text of the stat-
ute itself leads to the conclusion that only interest-
bearing instruments come under subsection 6013(5).
Thus, we can use this rule of construction to read
over the mistake of expression, if indeed there even
is one. Thus, the language of the statute, properly
read and interpreted, is contrary to the notion that a
"written instrument" as contemplated by subsection
6013(5) would not bear an interest rate.

In any event, however, I believe the majority should
concede that this statute is at least ambiguous. As
such, the plain language analysis of the majority can-
not prevail because in such circumstances we are
directed to give effect to the intent of the Legislature.
*Frankenmuth Mut Ins Co v Marlette Homes, Inc*, 456
Mich 511, 515; 573 NW2d 611 (1998). As the history of
this statute makes plain, the legislative intent is clear.
The Legislature intended that the higher rate of inter-
est apply only to interest-bearing instruments so as to
preclude debtors from defaulting to obtain the lower
judgment interest rate. Accordingly, we should con-
strue the ambiguous language of subsection 6013(5)
so as to effectuate that legislative intent. Said more
clearly, because it is at its worst an ambiguous stat-
ute, why do we, aware of its struggling drafter's goals,
insist on reading this statute in an unnecessarily
obtuse way so as to thwart the clear goal of the Legis-

lature. This is especially the case when, as I have pointed out, there is no doctrinal reason to do so.

Moreover, I feel constrained to point out that the majority opinion will have unfortunate unintended consequences for typical citizens in their roles as consumers. Because of this decision, any judgment on a written contractual obligation will accrue interest at twelve percent from the date of filing the lawsuit on the instrument. It is well to recall that many written contracts, such as those for home repairs, bear no interest rate. In these cases, typically, a consumer and a contractor merely agree that once the work is completed the full amount owing on the contract will be due. If payment is not immediately forthcoming, the statute, as read by the majority, imposes the currently quite unrealistic twelve percent rate on the amount due. This is not in all likelihood what the parties would have anticipated and is so favorable to the creditor that little time will be lost on negotiations with the debtor. Rather, almost instant resort to litigation, to start the high interest rate running, will, I fear, be the norm. This runs contrary not only to the interests of the debtor, but also contrary to our goal of discouraging litigation in favor of compromise and resolution.

Further, the majority creates an incentive for debtors in the future to deal in oral rather than written contracts. The reason is that debtors who fail to pay on an oral contract will only owe judgment interest at T-Bill plus 1 (currently much less than twelve percent), pursuant to subsection 6013(6), rather than twelve percent under subsection 6013(5). This encourages oral contracts and with it the disputed

understandings and resulting litigation that our law typically seeks to avoid.

For all these reasons, and to avoid the lamentable results I have suggested, I would hold that the plain language of subsection 6013(5), as properly understood, contemplates that only instruments bearing a rate of interest qualify for the twelve percent interest rate under that subsection. Because the insurance contract at issue did not bear a rate of interest, judgment interest should be limited to that specified under subsection 6013(6).

BOYLE and WEAVER, JJ., concurred with TAYLOR, J.