NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0674n.06

No. 08-2254

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Oct 07, 2009**

LEONARD GREEN, Clerk

|                                              |     |                            |
| -------------------------------------------- | --- | -------------------------- |
| ALTICOR, INC.,                               | )   |                            |
|                                              | )   |                            |
|    Plaintiff-Appellee         | )   | ON APPEAL FROM THE         |
|                                              | )   | UNITED STATES DISTRICT     |
|    v.                         | )   | COURT FOR THE WESTERN      |
|                                              | )   | DISTRICT OF MICHIGAN       |
| NATIONAL UNION FIRE INSURANCE                | )   |                            |
| COMPANY OF PENNSYLVANIA,                     | )   |                            |
|                                              | )   |                            |
|    Defendant-Appellant        | )   |                            |
|                                              | )   |                            |

BEFORE: MOORE and ROGERS, Circuit Judges; and THAPAR, District Judge.[*]

**ROGERS, Circuit Judge.** This diversity case stems from allegations of breach of contract. The contract in question is a settlement agreement that sought to end earlier litigation. In that agreement, National Union agreed that it had a duty to defend Alticor in still other litigation (which is still ongoing). Alticor used its own counsel in the ongoing litigation and billed National Union, which refused to pay certain charges, which led to the present litigation. The district court granted summary judgment to Alticor. National Union appeals with respect to only three issues: whether National Union's duty to defend required it to pay the rates charged by D.C. counsel instead of by Alticor's local counsel, whether National Union's duty to defend extended to paying for

---

[*]The Honorable Amul R. Thapar, United States District Judge for the Eastern District of Kentucky, sitting by designation.

representation for certain claims Alticor made in opposing parties' bankruptcy proceedings, and whether Michigan's penalty interest statute applies to any payments National Union wrongfully withheld. On the present state of the record, neither party is entitled to summary judgment on the first two issues, so the district court's decision must be vacated in part. However, the Michigan penalty interest statute applies to whatever award Alticor receives.

**I.**

In 2003, Alticor, Inc. and National Union Fire Insurance Company of Pittsburgh, PA, each sought a declaratory judgment against the other from the District Court for the Western District of Michigan. The companies disputed the extent to which the insurance policies Alticor had purchased from National Union obligated National Union to defend Alticor in certain litigation taking place in Texas. The parties settled the lawsuit with a written settlement agreement in 2006.

As part of the settlement agreement, National Union agreed to pay Alticor seven million dollars. National Union waived all rights to "payments, reimbursements of attorneys['] fees or costs and/or settlements by the plaintiffs in the Texas Litigation to Alticor." Further, National Union agreed "that it has a continuing duty to defend Alticor in the Texas Litigation with regard to defense costs incurred by Alticor after April 17, 2006." The settlement agreement separately defines the term "Texas Litigation" to include specific civil actions in state and federal courts. The federal action specified was the cases consolidated with Case No. 98-00367[1] in the district court for the Southern

---

[1]PACER searches suggest that the correct number is actually 4:98-cv-00352.

District of Texas, "which is currently pending in the United States Court of Appeals for the Fifth Circuit *and in the United States Bankruptcy Court.*" (emphasis added).

After the parties entered into the settlement agreement, Alticor forwarded legal invoices to National Union for payment. National Union paid many of the attorney fees Alticor sought but refused to pay certain charges. National Union declined to pay for matters involving the litigation related to bankruptcy proceedings involving plaintiffs in the Texas litigation. It also limited attorney fee reimbursement of Alticor's D.C. counsel to no more than $410 per hour, the highest rate charged by Alticor's local counsel. In addition, National Union declined to pay for legal electronic research charges and only paid for half of the time billed in matters relating to preparation for argument in an appeal in the Fifth Circuit.

Alticor filed this suit in mid-2007 based on the diversity of the parties. Alticor claimed to be a Michigan corporation with principal place of business in Michigan while National Union answered that it is a Pennsylvania corporation with principal place of business in New York. As of the time of filing, Alticor claimed that National Union had reimbursed only $186,302.24 of $579,886.44 of submitted invoices (32.1%). Alticor's Complaint consisted of five counts: breach of contract, three counts of estoppel, and one count claiming 12% interest under Michigan's penalty interest statute. The estoppel claims were based on allegations that National Union was aware of Alticor's counsel situation at the time of the settlement and did not object.

The parties both moved for summary judgment. The district court granted Alticor's motion. It held for Alticor on the legal research and appeal preparation claims. National Union has not

appealed this aspect of the judgment. With regard to the bankruptcy charges, the district court relied on another district court case to hold that "the affirmative prosecution of claims in bankruptcy was intended to limit Alticor's liability with respect to the claims defended in the Texas litigation," which was an "objectively reasonable strategy of experienced counsel," making the charges "defense costs." With respect to the charges for out-of-state counsel, the district court claimed that "National Union has a history of paying the rates of the [D.C.] attorneys to which it is now objecting," though it did not cite any record support for that statement. The court then held that the rates were reasonable as a matter of law. Finally, the district court held that Michigan law required 12% penalty interest. The district court entered judgment of $439,359.51 plus pre-judgment interest at 12%.[2]

National Union now appeals.

## II.

Summary judgment was not warranted on the breach of contract claim with respect to National Union's refusal to reimburse Alticor at the rates charged by its D.C. counsel. Whether National Union's capping of its reimbursement of Alticor's attorney fees at $410 per hour breached the contract appears to be a fact question that is both genuine and material, and not a legal issue as to which summary judgment would have been appropriate.

The normal de novo standard of review for summary judgment applies to this issue. *See Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 312 (6th Cir. 1997) (noting summary

---

[2]Since Alticor's Complaint claimed that the difference between the amounts billed and amounts paid was $393,584.20, additional charges had apparently accumulated during the litigation.

judgment standard of review); *cf. id.* at 312-13 (reviewing use of the court's inherent authority to award attorney fees, in contrast, for abuse of discretion). Alticor's breach of contract claim is governed by Michigan law, while the grant of summary judgment is governed by the familiar standards of Rule 56.

National Union's obligation to pay the higher fees depends on whether the fees were reasonable and necessary. *See Am. Bumper and Mfg. Co. v. Hartford Fire Ins. Co.*, 550 N.W.2d 475, 485 (Mich. 1996); *see also Iacobelli Const. Co., Inc. v. W. Cas. & Sur. Co.*, 343 N.W.2d 517, 522 (Mich. Ct. App. 1983) (noting that when insurer breaches duty to defend, insured is entitled to "reasonable attorney fees"); *Palmer v. Pac. Indem. Co.*, 254 N.W.2d 52, 55 (Mich. Ct. App. 1977) (same). In the context of this case the question appears to be one of fact rather than one of law.

The question of whether Alticor's reimbursement requests were reasonable is therefore a question for a factfinder.[3] Whether a party has breached a contract is typically a question of fact. *See State-William P'ship v. Gale*, 425 N.W.2d 756, 760 (Mich. Ct. App. 1988); *see also City of Detroit v. Porath*, 260 N.W. 114, 118-19 (Mich. 1935). Moreover, Michigan appears to empower juries to decide similar questions of reasonableness, such as whether a party attempted to perform a contract within a "reasonable" time. *See Waters v. Union Trust Co.*, 89 N.W. 687, 688 (Mich. 1902). Similarly, whether an insured has given an insurer a "reasonable" time to respond to

---

[3]The question of whether the factfinder in this case would be judge or jury was neither briefed nor helpfully argued on this appeal, and we take no position on that question.

correspondence is a jury question if "reasonable minds can differ." *See Moore v. First Sec. Cas. Co.*, 568 N.W.2d 841, 845 (Mich. Ct. App. 1997).

In this case, reasonable minds could differ as to whether the higher fees were reasonable and necessary. A factfinder could accept National Union's argument that the evidence shows that the D.C. counsel's rates were considerably higher than local counsel's rates and that the disparity is unreasonable in the context of this case. On the other hand, a factfinder could determine that paying the D.C. counsel's rates was necessary in light of those lawyers' skill and experience compared to that of local counsel. Because we have neither a jury verdict nor detailed findings of fact and conclusions of law from a district court, we are not in a position to resolve this question on appeal.

Dispositive legal guidance is not provided by those cases in which Michigan courts have awarded the attorney fees actually incurred by a party after its insurer wrongfully refused to defend it. *See, e.g.*, *City Poultry & Egg Co. v. Hawkeye Cas. Co.*, 298 N.W. 114, 116 (Mich. 1941); *Schiebout v. Citizens Ins. Co. of Am.*, 366 N.W.2d 45, 49 (Mich. Ct. App. 1985); *Cooley v. Mid-Century Ins. Co.*, 218 N.W.2d 103, 105 (Mich. Ct. App. 1974). When an insurance company is "vigorously denying that it [has] any duty to defend," the insured has "an incentive to minimize its legal expenses (for it might not be able to shift them)." *Taco Bell Corp. v. Cont'l Cas. Co.*, 388 F.3d 1069, 1075-76 (7th Cir. 2004). In such cases, the actually incurred fees are a reasonable measure of the damages caused by the insurer's wrongful refusal to defend. In contrast, in this case National Union has not wrongfully denied its duty to defend, but only disputes whether the amounts that Alticor claims were necessary to conduct that defense are reasonable.

The set of facts presented by this case does not appear to arise often, likely because insurers that admit to being under a duty to defend tend to assume control of the defense so as to control costs. It is not clear why National Union did not do so, but that does not mean that Alticor could bill any amount it incurred without regard to reasonableness. Alticor cannot take National Union's agreement to fund a defense as a blank check for Alticor to spend whatever it desires beyond that which is objectively reasonable.

The atypicality of the situation means that none of the Michigan duty-to-defend cases we have been referred to are directly on point, which contributes to our determination that the issue is properly considered one of fact.

Cases cited for the proposition that an attorney fee issue is one for the judge have involved the distinguishable situation where attorney fees are ancillary to substantive underlying litigation. It does not follow from such cases that Michigan courts would treat the reasonableness of attorney fees incurred under a contract as a question of law determined by the trial court. Numerous provisions of law allow a court to award attorney fees in certain circumstances to parties that prevail in underlying litigation. *E.g.*, 42 U.S.C. § 1988; 28 U.S.C. § 1927. In such a situation, the court's award of attorney fees is ancillary to the main litigation, and the admonition that attorney fee calculations "should not result in a second major litigation" applies. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). In contrast, this case involves alleged damages incurred due to breach of contract, albeit a contract for attorney services. The parties cite no law suggesting that in a case

where the contractual attorney fee claim is central rather than ancillary that a Michigan court has a freestanding power to award such damages akin to a that granted by a fee-shifting statute.

Alticor's other arguments for affirmance are without merit. The record does not support a contention that National Union "has a history" of paying the rates in question. The one-time lump-sum payment of $7 million to settle the earlier action did not specifically incorporate a declaration that it was calculated in part by reference to Alticor's counsel's fee schedules, and Alticor's attempts to give extra significance to that payment are not supported by the text of the settlement agreement or by the record.

Alticor also relies on an unpublished decision to suggest that federal common law should displace state law in the context of contractual damages relating to attorney fees. *See Graceland Fruit, Inc. v. KIC Chems., Inc.*, 320 F. App'x 323, 328 n.6 (6th Cir. 2008). *Graceland* involved a contract dispute in which one of the contract provisions involved shifting attorney fees to the losing party. We rationalized reference to federal common law by citing another case in which the court reasoned that standards for calculating attorney fees under ERISA could be determined by federal rather than state law. *See id.* (citing *Ford v. Uniroyal Pension Plan*, 154 F.3d 613, 620-21 (6th Cir. 1998)). The *Ford* court reasoned that states did not traditionally have "exclusive domain" over such attorney fee awards. *See* 154 F.3d at 620 & n.9. In contrast, the state does have domain over the insurance contract provision at the heart of this suit. In both *Graceland* and *Ford*, the attorney fee issue was ancillary to the main litigation; in this case, it is central. We do not read *Graceland* to say

that federal common law should displace state law when a central issue of state law in the litigation is whether the contractual attorney fee charges are reasonable.

The question of whether National Union breached the contract by refusing to pay the fees charged by D.C. counsel turns on whether those charges were reasonable and necessary. The issue is a genuine one of material fact, so that entry of summary judgment was not appropriate.

**III.**

Summary judgment was also improper on the liability for fees incurred by Alitcor's attorneys in the bankruptcy proceedings. While the settlement agreement contemplated some defense work in bankruptcy court, Alticor has not shown how much of its legal work in the bankruptcy court related to defense costs.

At the time of the settlement agreement, Alticor had prevailed in arbitration against the Texas plaintiffs, and had obtained a significant judgment against them. The Texas plaintiffs appealed the federal district court's confirmation of the arbitration award to the Fifth Circuit, but also filed for bankruptcy. Hence, what was left of the plaintiffs' claims (a chance to appeal to have the arbitration award set aside and start over in district court) became property of their bankruptcy estates. Alticor had two reasons to appear in the bankruptcy litigation—as a creditor to assert claims to its award from the arbitrator, and as a potential debtor as the defendant in the case then on appeal in the Fifth Circuit. As a creditor, Alticor had a claim on the assets of each estate. And as a potential debtor, Alticor had reason to seek settlement with the bankruptcy trustee of each estate.

National Union's duty to defend Alticor extended only to Alticor's role as a potential debtor. Alticor as a creditor sought money from the bankruptcy estates, but recovery of that money would not contribute to Alticor's defense—indeed, under the settlement agreement, National Union was not entitled to offset any of Alticor's financial recovery from the Texas plaintiffs against the costs of Alticor's defense. Alticor's pursuit of its claims as a creditor thus does not comfortably fit within the normal definition of the duty to defend. Rather, that pursuit resembles normal collection actions by a business against its debtors. The Michigan Supreme Court has distinguished between "defense costs" and "normally incurred costs of doing business." *Am. Bumper*, 550 N.W.2d at 486. Costs incurred pursuing claims against debtors are normally costs of doing business.

Alticor's argument that pursuing offensive claims against the bankruptcy estates put pressure on the trustees to settle goes too far—if Alticor had an unrelated tort claim against the estates, for instance, prosecuting it would not be related to limiting Alticor's liability as a potential estate debtor, even if pursuing the unrelated claim put pressure on the trustees to reach a global settlement. Any litigation, no matter how tangentially related to limiting Alticor's potential liability, would be justified by Alticor's theory. Rather, National Union's duty to defend extended only to representing Alticor's interests as a potential debtor—in other words, to representing Alticor only with respect to settling the bankruptcy estates' potential claims against Alticor.

National Union's duty to defend thus did not encompass all of Alticor's litigation activity in the bankruptcy court. Summary judgment is therefore not warranted at this stage of the litigation, as Alticor claimed a right to reimbursement for all of the bankruptcy court litigation. On remand,

Alticor may recover for breach of contract only for bankruptcy court legal bills that it can show were directly for work relating to Alticor in its role as a potential estate debtor. Alticor may not recover for work done solely to advance its bankruptcy court claims as a creditor against the Texas plaintiffs.

**IV.**

Michigan's 12% penalty interest statute applies to Alticor's recovery. The district court correctly awarded penalty interest on damages awarded by the non-appealed parts of the judgment, and if Alticor prevails on any of the remaining issues on remand, it will be entitled to 12% interest.

M.C.L. § 500.2006(4) provides that when an insurer does not pay benefits on a timely basis that a 12% interest penalty applies. While the statute exempts certain third party tort claims that are "reasonably in dispute," it does not exempt other claims. The plain text of the statute appears to apply to this situation.[4] Moreover, that interpretation is in line with statements by the Michigan Supreme Court, *see Yaldo v. N. Pointe Ins. Co.*, 578 N.W.2d 274, 277 & n.4 (Mich. 1998), and with

---

[4]"(1) A person must pay on a timely basis to its insured, an individual or entity directly entitled to benefits under its insured's contract of insurance, or a third party tort claimant the benefits provided under the terms of its policy, or, in the alternative, the person must pay to its insured, an individual or entity directly entitled to benefits under its insured's contract of insurance, or a third party tort claimant 12% interest, as provided in subsection (4), on claims not paid on a timely basis. Failure to pay claims on a timely basis or to pay interest on claims as provided in subsection (4) is an unfair trade practice unless the claim is reasonably in dispute. . . .

"(4) If benefits are not paid on a timely basis the benefits paid shall bear simple interest from a date 60 days after satisfactory proof of loss was received by the insurer at the rate of 12% per annum, if the claimant is the insured or an individual or entity directly entitled to benefits under the insured's contract of insurance. If the claimant is a third party tort claimant, then the benefits paid shall bear interest from a date 60 days after satisfactory proof of loss was received by the insurer at the rate of 12% per annum if the liability of the insurer for the claim is not reasonably in dispute, the insurer has refused payment in bad faith and the bad faith was determined by a court of law. The interest shall be paid in addition to and at the time of payment of the loss. . . ." M.C.L. § 500.2006.

the holding of the Michigan Court of Appeals, *see Griswold Properties, L.L.C. v. Lexington Ins. Co.*, 741 N.W.2d 549, 557 (Mich. Ct. App. 2007).

National Union claims that we must follow an earlier Court of Appeals decision, overruled by *Griswold*, that held to the contrary. *See Arco Indus. Corp. v. Am. Motorists Ins. Co.*, 594 N.W.2d 74, 75-76 (Mich. Ct. App. 1998), *aff'd by an equally divided court*, 617 N.W.2d 330 (2000). The Court of Appeals in *Arco* held that any claim reasonably in dispute was not subject to the 12% interest penalty. The Court of Appeals disregarded as dictum the Michigan Supreme Court's statement in *Yaldo* that the reasonably in dispute language applied only to third party tort claims. The *Griswold* conflicts panel later overruled *Arco*, analyzed the statutory language, and held that the Court of Appeals should have reached the result suggested by *Yaldo*.

National Union's theory is that *Arco* controls because the Michigan Supreme Court affirmed *Arco* by equal division, 617 N.W.2d 330, but National Union cites nothing to suggest that Michigan courts give more weight to affirmances by equal division than federal courts do. On the contrary, it appears that Michigan follows the same rule as the federal system—affirmance by an equally divided court sets no precedent for future cases. "The clear rule in Michigan is that a majority of the Court must agree on a ground for decision in order to make that binding precedent for future cases. If there is merely a majority for a particular result . . . the case is not authority beyond the immediate parties." *People v. Anderson*, 205 N.W.2d 461, 467 (Mich. 1973) (collecting cases). We can safely rely on *Yaldo* and *Griswold* to predict that the Michigan Supreme Court would not follow *Arco*.

The plain text of the statute as interpreted by the Michigan courts applies to National Union's contract to provide certain benefits to Alticor. National Union thus is liable for 12% penalty interest on any funds it wrongfully withheld from Alticor.

**V.**

For the foregoing reasons, we vacate the judgment of the district court insofar as it awarded summary judgment on the counsel rates and bankruptcy fees, affirm the judgment insofar as it awarded 12% penalty interest on those portions of the judgment that National Union did not appeal, and remand for further proceedings consistent with this opinion.