**SYMOREX, INC. Plaintiff,**

**v.**

**SIEMENS INDUSTRIAL AUTOMA-TION and Siemens Electrocom, L.P., Defendants.**

**No. 99–71803.**

United States District Court, E.D. Michigan, Southern Division.

June 29, 2001.

Todd R. Mendel, Barris, Sott, Detroit, MI, Dale A. Cooter, Cooter, Mangold, Washington, DC, for Symorex, Incorporated, plaintiffs.

Larry J. Saylor, Miller, Canfield, Detroit, MI, Mark T. Boonstra, Miller, Canfield, Ann Arbor, MI, Craig Holman, Kara L. Daniels, Holland & Knight, Washington, DC, for Siemens Industrial Automation, Incorporated, defendants.

## OPINION DENYING DEFENDANTS' MOTION TO REJECT INTEREST COMPONENT OF PLAINTIFF'S PROPOSED JUDGMENT, ENTERING JUDGMENT IN FAVOR OF PLAINTIFF AND ORDERING DEFENDANTS TO SHOW CAUSE WHY RULE 11 SANCTIONS SHOULD NOT BE IMPOSED

ROBERTS, District Judge.

### I. INTRODUCTION

Presently before the Court is Defendants' Motion to Reject Interest Compo-

nent of Plaintiff's Proposed Judgment [**Doc.# 183–1**]. Plaintiff received a jury award of $12,231,817.00 on April 11, 2001 and submitted a Proposed Judgment which includes prejudgment interest in the amount of $3,147,085.52 (calculated from April 12, 1999—April 27, 2001). Defendant claims that Plaintiff is not entitled to interest on the judgment for three reasons: (1) Plaintiff waived its right to recover prejudgment interest when it entered into the License Agreement with Defendants; (2) Defendants are not responsible for delays that are addressed by the prejudgment interest statute; and (3) if Plaintiff is entitled to any interest, the rate of interest should be a floating one and not a flat rate of 12%. Defendants rely upon M.C.L. § § 600.6013(6) for this proposition.

Plaintiff claims that it is entitled to statutory interest on the jury's verdict and that the statutory interest should be calculated at a rate of 12% pursuant to M.C.L. § § 600.6013(5).

For the following reasons, the Court **DENIES** Defendants' Motion to Reject Interest Component of Plaintiff's Proposed Judgment [**Doc. # 183–1**].

## II.  *STANDARD OF REVIEW*

■   Prejudgment interest is a substantive element of damage which must be determined under state law when jurisdiction is based upon diversity of citizenship. *See, Bailey v. Chattem, Inc.* 838 F.2d 149, 152 (6th Cir.1988); *Diggs v. Pepsi–Cola Metropolitan Bottling Co., Inc.,* 861 F.2d 914, 924 (6th Cir.1988). In Michigan, prejudgment interest is not discretionary as the statute provides in relevant part that "interest on a money judgment recovered in a civil action shall be calculated ... from the date of filing the complaint" and "shall be calculated on the entire amount of the money judgment, including attorney fees and other costs." *MCL § 600.6013(6)*.

Michigan courts have held that a trial court's interpretation of the prejudgment interest statute is a question of law, which is reviewed *de novo*. *See, Attard v. Citizens Ins. Co.,* 237 Mich.App. 311, 602 N.W.2d 633(1999).

"Therefore, this Court must apply Michigan state substantive law in deciding whether or not to award plaintiff pre-judgment interest." *Holland v. Earl G. Graves Pub. Co., Inc.,* 33 F.Supp.2d 581, 582 (E.D.Mich.1998).

## III.  *APPLICABLE LAW & ANALYSIS*

### A.  Waiver of Right to Prejudgment Interest

■   Defendants argue that Plaintiff has waived its right to statutory interest by virtue of § 11.16 of the License Agreement, which provides that "Neither party shall be liable, whether in contract, indemnity, warranty, tort (including negligence), strict liability or any other legal theory for indirect, incidental, special, liquidated, or consequential damages." *(Exhibit A of Defendant's Motion to Reject Interest Component of Plaintiff's Proposed Judgment).* Therefore, Defendants maintain that Plaintiff agreed to restrict its right to recover interest on its judgment because interest is considered to be a type of indirect, incidental, special or consequential damage.

■   Defendants are correct in their assertion that interest on a judgment is a waivable component of a judgment award. *Freysinger v. Taylor Supply Co.,* 197 Mich.App. 349, 351, 494 N.W.2d 870 (1992). However, Defendants' argument is unpersuasive for three reasons. First, Defendants cite several state cases other than Michigan law as authority for its position. Pursuant to the standard of review in this

matter, this Court is to decide upon the issue of prejudgment statutory interest in accordance with Michigan law. An award of interest on a money judgment is mandatory in Michigan. *City of Warren v. Dannis,* 136 Mich.App. 651, 357 N.W.2d 731 (1984); *Everett v. Nickola,* 234 Mich.App. 632, 599 N.W.2d 732 (1999) (award of interest is mandatory in all cases to which the statute applies).

In an attempt to get around the mandatory aspect of M.C.L. § § 600.6013, Defendants cite *Moholland v. Empire Fire & Marine Ins. Co.,* 746 A.2d 362, 364, 2000 ME 26 (Me.2000) in their Reply Brief. Defendants state that the Maine prejudgment interest statute contained mandatory language, but the court still denied plaintiff's request for such an award. However, the difference is that in *Moholland,* there was a specific contractual provision which limited defendant's damage exposure to a particular amount of money. Consequently, the *Moholland* court would not allow the assessment of interest to breach the contractual agreement between the parties. That is not the situation in this case. The parties in this matter did not agree to a cap on damages. Moreover, *Moholland* is not instructive in this matter because it is a Maine state case.

Second, all of the cases cited by Defendant in support of their position present situations where there is either a contract, settlement, or consent judgment in which the parties *specifically* agreed to waive the prejudgment or post-judgment interest component. Clearly, there was neither a settlement or consent judgment in this case.

Defendants rely upon *Firwood Manufacturing Co. v. General Tire, Inc.,* 96 F.3d 163 (6th Cir.1996) to support its position that statutory prejudgment interest is a component of damages (i.e., consequential damages) limited by the contract between the parties. However, the *Firwood* Court goes on to explicitly articulate the difference between mandatory statutory interest pursuant to M.C.L. § § 600.6013 and discretionary prejudgment interest as an element of damage.[1] The *Firwood* court stated that plaintiff in that case was not entitled to compensation for the loss of use of funds as an element of damages, given the U.C.C. consequential damages limitation. Then the court stated as follows:

> Nevertheless, Firwood was entitled to claim statutory interest from the date on which suit was filed under Mich. Comp. Laws Ann. § 600.6013 even if, as a seller, it was not entitled to interest as a measure of damages under the U.C.C. *Cf. Banish v. City of Hamtramck,* 9 Mich.App. 381, 157 N.W.2d 445 (1968) (considering "the question of prejudgment interest, i.e., interest allowed as damages, as distinguished from statutory interest."); *Militzer v. Kal–Die Casting Corp.,* 41 Mich.App. 492, 200 N.W.2d 323, 326 (1972) ("Defendant fails to distinguish between judgment interest [under Mich. Comp. Laws Ann. § 600.6013] and prejudgment interest. The former is statutory and mandatory, the latter is an element of damages and discretionary.").

For the foregoing reasons, the District Court is Affirmed in all respects except:

---

1. In *Firwood* the plaintiff was awarded prejudgment interest as a component of damages in his breach of contract action. On appeal, defendant sought to have the interest component of the award remitted. The Sixth Circuit noted that under the U.C.C., sellers are not entitled to consequential damages (functional equivalent to the damages limitation involved in this case), the Sixth Circuit, in language relied on by Defendants, then states that "sellers are not entitled to [lost use of money] as an element of the damage award because lost use of funds is a consequential damage." *Id.* at 171.

the award of interest as an element of damages is VACATED, and the case is REMANDED for the District Court for calculation of prejudgment interest under Mich. Comp. Laws. Ann. § 600.6013. *Firwood Manufacturing Co., supra* at 172–173 [2].

Defendants also cite *Computer–Link v. Recognition Equipment,* 670 F.Supp. 455 (D.Mass.1987) in support of their position that prejudgment interest is included under indirect, special or consequential damages. In *Computer–Link,* the plaintiff was denied statutory prejudgment interest, but *Computer–Link* is not binding authority in this case for three (3) reasons. First, Texas law was followed. Second, in Texas, not only is the imposition of statutory prejudgment interest discretionary, but the rate of interest is also within the discretion of the court. Finally, although the plaintiff was denied prejudgment interest, it was not because prejudgment interest was deemed to be "consequential" or "indirect" damage, but rather because the court was not of the opinion that the plaintiff had met its burden of showing that an interest award was proper. In fact, the *Computer–Link* court specifically would not commit to stating that prejudgment interest is the same as consequential damage:

> I do not read *Three–Seventy Leasing Corp. [v. Ampex Corp.,* 528 F.2d 993 (5th Cir.1976)] as stating that an award of prejudgment interest is a form of indirect, special, or consequential damages. Rather, the narrow question in that case was whether lost profits fell within the definition of consequential damages. Similarly, *General Supply and Equipment [v. Phillips,* 490 S.W.2d

913 (Tex.Civ.App.—Tyler 1972)], while stating that general proposition that provisions limiting damages will be upheld, cannot be read to state that prejudgment interest is a form of indirect, special, or consequential damages under Texas law. Neither plaintiff nor defendant has cited any Texas case which definitively answers whether or not an award of prejudgment interest is a form of indirect special or consequential damages.

*Id.* at 455–456. Accordingly, the court exercised its discretion and did not make such an award.[3]

Defendants also cite *Vannoy v. City of Warren,* 26 Mich.App. 283, 288, 182 N.W.2d 65 (1971), *aff'd,* 386 Mich. 686, 194 N.W.2d 304 (1972) in support of their allegation that prejudgment interest and consequential damages are synonymous. However, that was not the holding of the *Vannoy* court. While it is true that *Vannoy* held that interest as an element of damages and statutory interest are related because both types of interest serve the same basic function (i.e., to compensate the plaintiff for the loss of the use of funds), *Vannoy* is not instructive in this case because the issue in *Vannoy* was not whether the plaintiff waived any rights to a prejudgment interest award, but rather whether the plaintiff would be overcompensated with an award of prejudgment interest since part of the jury award (i.e., as an element of damages) included interest.

Specifically, the *Vannoy* court held:

---

**2.** *Firwood* clearly supports Plaintiff's position in this case, yet Defendants have attempted to twist the language of the decision to fit their position. This is only the beginning of Defendants' disingenuous presentation of support for their motion.

**3.** This is another example of Defendant's disingenuous citation to inapplicable case law in an attempt to support a position that has no merit based upon Michigan law.

[i]n a wrongful death action, where a claim accrues as of a date certain, the jury is to be instructed to include as part of its award of damages interest from the date of injury to the date the complaint was filed. When the verdict is returned the defendant shall immediately be liable for statutory interest from the date of the complaint to the date the judgment is paid computed in accordance with MCLA § 600.6013.

*Id.* at 689.

Therefore, statutory prejudgment interest was in fact awarded, but it was done so in parts (i.e., interest as an element of damages to run from the date of injury until the date the complaint was filed; and statutory interest to run from the date the complaint was filed until the date the judgment was paid) so that the plaintiff would not get a "double dip" of interest on the jury award.[4]

As a result of the foregoing, Defendants have failed to show that prejudgment interest is to be considered consequential, indirect or special damages. Defendants have further failed to show that Plaintiff waived its rights to receive prejudgment interest on its jury award.

## B. Floating Interest Rate v. 12% Interest Rate

■ Defendants contend that if statutory prejudgment interest is to be awarded at all, it should be awarded under M.C.L. § § 600.6013(6) (a rate equal to 1% above U.S. Treasury Notes) rather than under M.C.L. § § 600.6013(5) (the higher rate of 12%). Defendants argue that M.C.L. § § 600.6013(5) is inapplicable because that subsection refers to judgments rendered on a "written instrument." Defen-

dants go on to assert that the License Agreement is not a "written instrument" and therefore, subsection (5) does not apply.

MCL § 600.6013(6) states as follows:

Except as otherwise provided in subsection (5) and subsection (11), for complaints filed on or after January 1, 1987, interest on a money judgment recovered in a civil action shall be calculated at 6-month intervals from the date of filing the complaint at a rate of interest that is equal to 1% plus the average interest rate paid at the auctions of 5-year United States treasury notes during the 6 months immediately preceding July 1 and January 1, as certified by the state treasurer, and compounded annually, pursuant to this section. Interest under this subsection shall be calculated on the entire amount of the money judgment, including attorney fees and other costs. However, the amount of interest attributable to that part f the money judgment from which attorney fees are paid shall be retained by the plaintiff, and not paid to the plaintiff's attorney.

*MCL § 600.6013(6).*

Plaintiff, on the other hand, contends that the higher 12% rate of interest is applicable because the License Agreement is a "written instrument" within the meaning of M.C.L. § § 600.6013(5):

For complaints filed on or after January 1, 1987, if a judgment is rendered on a written instrument, interest shall be calculated from the date of filing the complaint to the date of satisfaction of the judgment at the rate of 12% per year compounded annually, unless the instrument has a higher rate of interest. In

---

**4.** This is another misrepresentation of the facts of a case and the holding. Defendants took phrases out of the text of the case that seemed favorable to their position, but failed to be forthcoming about the context in which those phrases were in and the outcome of the matter. ·

that case interest shall be calculated at the rate specified in the instrument if the rate was legal at the time the instrument was executed. The rate shall not exceed 13% per year compounded annually after the date of judgment entered. *MCL § 600.6013(5)*.

Therefore, the issue is whether the License Agreement is a "written instrument." Defendants argue that the Agreement is not a "written instrument" relying upon *Perceptron, Inc. v. Sensor Adaptive Machines, Inc.*, 221 F.3d 913 (6th Cir.2000) and *Miszewski v. Knauf Construction, Inc.*, 183 Mich.App. 312, 454 N.W.2d 253 (1990); and, the dissenting opinion in *Yaldo v. North Pointe Ins. Co.*, 457 Mich. 341, 578 N.W.2d 274 (1998). Upon review of these cases, the Court finds none of them to be persuasive.

First, *Perceptron* did not address whether the interest calculation approach of subdivision (5) or (6) is to be utilized or what a "written instrument" is. Rather the issue was whether the interest should be applied to the *entire* judgment and from what date it should be calculated. It is true that M.C.L. § § 600.6013(6) is cited in the text of the *Perceptron* opinion. However, it is only cited to support the court's holding that prejudgment interest is not discretionary and that the interest shall be calculated on the entire amount of the money judgment. *Perceptron, supra* at 922.

Presumably, since the claim in *Perceptron* arose out of a breach of a non-compete agreement (i.e., written instrument) and M.C.L. § § 600.6013(6) is cited in the text of the opinion, Defendants would like this Court to conclude that the interest awarded on the "written instrument" was based upon M.C.L. § § 600.6013(6). This is a giant leap for this Court to take since the *Perceptron* court did not discuss either what rate of interest was awarded or the issue of a "written instrument."

Similarly, in *Miszewski*, the court does not address issues regarding the rate of interest or whether or not the money judgment was on a "written instrument."

The *Yaldo* dissent does address the issue of "written instruments" and rates of interest. However, so does the opinion of the majority. And, it is the majority view that has been adopted and interpreted to apply to all written contracts. In *Yaldo*, the Michigan Supreme Court held that an insurance policy is a "written instrument" within the meaning of subsection (5). *Yaldo, supra*, 457 Mich. at 341, 578 N.W.2d 274. The *Yaldo* majority "refuse[d] to rewrite the language of the statute effectively to limit 'written instruments' to 'negotiable instruments.'" *Id.*, 578 N.W.2d at 276 The *Yaldo* court further noted that "Michigan courts have interchanged the term 'written instrument' with 'written contract' and 'insurance contract'". *Id.* Finally, in focusing on the distinction between claims based on written contracts, and tort claims, the *Yaldo* court stated:

> The Legislature's choice to impose a higher rate of interest on defendants who enter into written contracts is not arbitrary. First, there is a distinction between contract claims and tort claims. Tort claimants often do not have preexisting relationships with their tortfeasors. On the other hand, there is a preexisting relationship between two parties who have signed a written contract. Greater expectations regarding performance and payments are likely to exist when the parties have established their rights and responsibilities before a controversy arises.

*Id.* at 278.

Notwithstanding the foregoing language, Defendants argue that *Yaldo* does not stand for the proposition that all contracts in writing are "written contracts" within

the meaning of M.C.L. § § 600.6013(5). To the contrary, even the dissent, whose opinion Defendants discuss at length, reads the majority's opinion as standing for that very proposition: "Because of this decision, any judgment on a written contractual obligation will accrue interest at twelve percent from the date of filing the lawsuit on the instrument." *Id.* at 281–82 *(Taylor, J. dissenting)*.

In support of Plaintiff's position, federal courts in Michigan have interpreted M.C.L. § § 600.6013(5) as applying to all written contracts. *Holland v. Earl G. Graves Publishing Co., Inc.*, 33 F.Supp.2d 581, 583 (E.D.Mich.1998) ("The term 'written instrument' encompasses written contracts."), *citing Yaldo* (under Michigan law, an employee who brings a successful breach of employment contract is entitled to an interest rate of 12%); *Kvaerner U.S., Inc. v. Hakim Plast Co.*, 74 F. Supp 2d 709, 723 (E.D.Mich.1999) ("The term 'written instrument' encompasses written contracts.").

As a result of the foregoing, the Court agrees with Plaintiff that it is entitled to a 12% prejudgment rate of interest because the License Agreement (i.e., a written contract) qualifies as a "written instrument" under M.C.L. § § 600.6013(5).

## C. Litigation Delays and the Prejudgment Interest Statute

■ Defendants contend that Plaintiff should not be awarded any prejudgment interest because Plaintiff unreasonably delayed the litigation process by seeking $50,000,000.00 in damages in its Complaint and by failing to provide a damages analysis within the first 4–6 months after filing the Complaint. Also, Defendants cite to some alleged unresponsive interrogatory answers as causing a delay in these proceedings.

■ The purpose of prejudgment interest is to compensate the prevailing party for expenses incurred in bringing actions for money damages and for any delay in receiving such damages. *Dedes v. Asch,* 233 Mich.App. 329, 339–340, 590 N.W.2d 605 (1998).[5] However, prejudgment interest may be disallowed for periods of delay not the fault of, or caused by, the losing party. *Id.; Phinney v. Perlmutter,* 222 Mich.App. 513, 540–541, 564 N.W.2d 532 (1997); *Eley v. Turner,* 193 Mich.App. 244, 483 N.W.2d 421 (1992) (considering a four year delay due to an interlocutory appeal and then a lost file, the court found that although statutory interest would not be awarded for the approximately eighteen months during which the court file was lost, statutory interest would be awarded for the two years and two months during which the appellate process was underway.)[6].

The alleged "delays" complained about by Defendants occurred either prior to the filing of this action as part of settlement negotiations, or before the discovery cut-off deadline. (i.e., a July 1998 letter) *(Exhibit D to Defendant's Motion)* and December 1999 answers to interrogatories *(Exhibit B to Defendants' Motion)*.

5. In *Dedes,* the delay was the result of the state Supreme Court's agreement to grant the plaintiff's leave to appeal from a ruling on a significant issue that was raised during the course of the litigation. The appellate court held that it would not award statutory interest for the period that the litigation was delayed by reason of the intervening appeal to the state Supreme Court.

6. Interestingly, statutory interest was awarded for the period of the appellate delay even though it was the plaintiff who appealed and even though the plaintiff was not successful on appeal.

It is docketed on November 1, 1999 that both parties stipulated to extending the deadline for Plaintiff to file a response to Defendants' motion to dismiss count II of the complaint; on November 22, 2000, it is docketed that Defendants' filed a motion to compel production of documents; on November 27, 2000, it is docketed that Plaintiff filed a motion to compel deposition testimony from the Defendants. On two occasions, Defendants' Reply Brief was stricken. The parties stipulated to an extension of expert discovery; and, it is docketed that both parties stipulated to extend the discovery cut-off deadline one month past the original date (11/1/00—new date).

Defendants have not shown that Plaintiff has acted unreasonably to cause an undue delay in the proceedings. Any delays in this matter were either mutually agreed upon or perfectly normal in the course of discovery while litigating a case. Therefore, Plaintiff should not be precluded from a prejudgment interest award because this matter took two years to resolve.

## D.  Rule 11 Sanctions

Rule 11 of the Federal Rules of Civil Procedure provide that a court may impose sanctions on its own initiative. Fed. R.Civ.P. 11(b) and (c)(1)(B) states in pertinent part:

"(b) Representations to Court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, (2) the claims, defenses, and other legal contentions therein are warranted by existing law ... [and]; (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery ..."

\*　　\*　　\*　　\*　　\*　　\*

"(c) Sanctions. If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation."

\*　　\*　　\*　　\*　　\*　　\*

"(B) On Court's Initiative. On its own initiative, the court may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b) with respect thereto."

██  "An attorney whom the court proposed to sanction must receive specific notice of the conduct alleged to be sanctionable and the standard by which that conduct will be assessed, and an opportunity to be heard on that matter, and must be forewarned of the authority under which sanctions are being considered, and given a chance to defend himself against specific charges." *Schlaifer Nance & Co., Inc. v. Estate of Warhol,* 194 F.3d 323, 334 (2d Cir.1999), *quoting, Sakon v. Andreo,* 119 F.3d 109, 114 (2d Cir.1997). Defendants' motion should never have been filed because it was not warranted by existing law; and, it constituted a delay tactic in paying the judgment. First, the law is clear, as cited above, that in federal diversity cases in Michigan where the issue is the assessment or imposition of prejudgment interest, Michigan law *must* be followed. However, Defendants cite a litany of *state* cases

from Maine, Florida, New Jersey, Washington, Delaware, Texas, Massachusetts, and Wisconsin in support of their various theories to preclude the imposition of a prejudgment interest award.

Second, the law is clear that there is a difference between statutory prejudgment interest and interest as an element of damages, yet Defendants attempt to muddy the waters by citing other state cases, citing other federal cases that do not rely upon Michigan law; and, by lumping both types of interest under the category of consequential or indirect or special damages so that they can argue that Plaintiff waived its rights to prejudgment interest. Additionally, the cases cited by Defendants in support of the waiver argument, were cases where there was *specific* language in the settlement agreement, consent judgment or contract which *specifically* indicated that prejudgment, post-judgment or pre-complaint interest would be waived.

Third, the law is clear in Michigan that *prejudgment* interest is mandatory. The only issue to be resolved, based upon the facts, is the rate of interest, the time period in which it is calculated; and if there is any other interest award (i.e., element of damages) which may affect any contractual agreement the parties may have. However-er, Defendants, again relied upon other state law in an attempt to mislead the Court into deciding that this is a discretionary decision that it can make.

Fourth, Defendants pulled language from cases that may have sounded favorable toward their position, but the case itself was not favorable. It appeared that Defendants again tried to mislead the Court into believing that these cases from which favorable language was extrapolated were cases which held in Defendants' favor.

Finally, based upon the official and internal docket, there has been no unreasonable delay in the litigation of this case, but Defendants make this baseless and frivolous assertion as another means of precluding Plaintiff from collecting interest on its judgment.

The only argument that may have warranted some exploration was the issue of whether the License Agreement in this case constituted a "written instrument." However, upon reviewing the law in this area, Defendants should have realized that the Agreement does constitute a "written instrument" under present law, thus requiring the application of M.C.L. § § 600.6013(5) [7].

7. In footnote 5 of Defendants' Reply Brief, they cite *Ayar v. Foodland Distributors,* Docket # 214293, 2000 WL 33400197 (2000). It is an unpublished opinion which apparently is presently before the Michigan Supreme Court on an Application for Leave to Appeal. Defendants urge this Court to put off a decision in this matter until the Michigan Supreme Court decides whether to grant leave in the *Ayar* case. It is a 34 page opinion. However, the portion that is relevant to this case is found on pages 32–34. The *Ayar* court found in plaintiff's favor awarding 12% interest on the "written instruments" (agreements pertaining to grocery stores in the Detroit area). The *Ayar* court followed *Yaldo* cited above finding that "[o]pinions interpreting and applying *Yaldo* make it clear that Supreme Court's broad understanding of what constitutes a "written instrument" under subsection 5 goes beyond the insurance context." "The RFR agreement in this case is indisputably "an agreement or understanding reduced to writing as a means of giving formal expression" to the parties' agreement concerning Ayar's preemptive right to negotiate contracts to operate a grocery store in four different locations. Although Kroger contends that the judgment on the award for diminution in value of the RFR agreement does not constitute a judgment on a written instrument, the diminution in value flows from that breach of the written RFR agreement. Therefore, the judgment the trial court entered encompassing the award was a judgment "on the written instrument" and the trial court did not err in

## IV. CONCLUSION

Based on the foregoing, Defendants' Motion to Reject Interest Component of Plaintiff's Proposed Judgment be **DENIED**. Judgment will be entered for the Plaintiff. The Court also orders Defendants to show cause why Rule 11 sanctions should not be imposed for the filing of this Motion, as well as for the filing of Defendants' Ex Parte Motion for Leave to File a Supplemental Brief [**Doc. # 190–1**], which is addressed in a separate Order of the Court. Defendants should do so in writing by Friday, July 27, 2001.

**IT IS SO ORDERED.**

applying the interest rate in subsection 5." Therefore, requesting this Court to wait for the Michigan Supreme Court to decide whether or not to grant leave and then on the

off chance that it does, wait for another number of years while the matter is on appeal is unreasonable, unfair and yet another attempt by Defendants to delay paying the judgment.