*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JERRY D. PAUL and JOANNE PAUL,

      Plaintiffs-Appellees/Cross-Appellants,

v

FARM BUREAU INSURANCE COMPANY OF MICHIGAN,

      Defendant-Appellant/Cross-Appellee.

UNPUBLISHED
April 6, 2023

No. 359396
Isabella Circuit Court
LC No. 16-013174-CZ

Before: SHAPIRO, P.J., and LETICA and FEENEY, JJ.

PER CURIAM.

Defendant, Farm Bureau Insurance Company of Michigan, appeals by right, and plaintiffs, Jerry and Joanne Paul,[1] cross-appeal by right, from a judgment entered in plaintiffs' favor by the trial court following a jury trial. Because we conclude that the trial court did not abuse its discretion by disallowing the sudden-emergency instruction, we affirm in part the judgment in plaintiffs' favor but reverse the denial of penalty interest.

## I. BACKGROUND

On February 14, 2015, plaintiffs were driving through Indiana on their way from Michigan to Florida when they became caught in whiteout conditions and, ultimately, became involved in a multi-vehicle accident.[2] There were ultimately 15 vehicles found in the freeway pileup when law enforcement arrived. Plaintiffs were not injured in their initial collision. However, when visibility conditions improved, Jerry exited his vehicle while Joanne remained inside. Another vehicle then crashed into plaintiffs' vehicle, causing plaintiffs' vehicle to strike Jerry, seriously injuring him.

---

[1] For simplicity, we will refer to the individual plaintiffs by their first names where applicable.

[2] There appears to be no dispute that Michigan law properly applies to this matter. See *Sutherland v Kennington Truck Svc, Ltd*, 454 Mich 274, 286; 562 NW2d 466 (1997).

That other vehicle has never been identified. Defendant was plaintiffs' insurer, and defendant paid personal injury protection (PIP) benefits but refused to pay uninsured motorist (UIM) benefits.

This is the third time this matter returns to this Court, and most of the essential facts, as set forth above, are undisputed. In the first appeal, we determined that there had been "actual physical contact" between Jerry and the unidentified vehicle for purposes of the parties' insurance policy. *Paul v Farm Bureau Ins Co*, unpublished per curiam opinion of the Court of Appeals, issued June 19, 2018 (Docket No. 339075) (*Paul I*). On remand, defendant argued that Jerry would only be entitled to recover UIM benefits under the parties' insurance policy if he could establish that the unidentified driver was negligent. Defendant further argued that all of the vehicles involved in the accident must have encountered the same whiteout conditions, which precluded any possible determination that they—including the driver of the unidentified vehicle—were negligent. The trial court disagreed and granted partial summary disposition in favor of plaintiffs, largely on the basis of an affidavit from Joanne to the effect that visibility had improved by the time of the second collision. The matter returned to this Court, and we vacated the trial court's grant of partial summary disposition in favor of plaintiffs. We reasoned, in part, that the veracity of Joanne's statements regarding the weather conditions was for the jury decide. *Paul v Farm Bureau Ins Co*, unpublished per curiam opinion of the Court of Appeals, issued May 21, 2020 (Docket No. 345507) (*Paul II*), p 4.

On remand, the case proceeded to trial.[3] Jerry testified and could not recall anything about the accident that resulted in him suffering a traumatic brain injury. Joanne testified that as they were driving in Indiana, they encountered snow that initially was not very hard, but conditions became intermittently worse, so Jerry, who was driving, "slowed down and put his flashers on because there would be snow and then there wouldn't be snow." Joanne testified that "all of a sudden, a sheet dropped down in front of us and then we hit" another vehicle in front of them. She opined that Jerry was driving at approximately 25 to 30 miles an hour, and he was unable to avoid the first collision "because you couldn't see it." Neither Joanne nor Jerry were injured in the first collision. Joanne testified that after a few minutes, conditions changed, i.e., "the snow let up," and although the conditions when they were struck were "not completely clear," they had "lightened up because [she] could see the people out of the angle of the driver's side window."

Perhaps two to three minutes after that first collision, Jerry exited the vehicle after someone knocked on the window and a few minutes later plaintiffs' vehicle was struck from behind. This caused the car to spin such that the rear quarter panel of plaintiffs' vehicle struck Jerry. This occurred during a time that, according to Joanne, the whiteout conditions had abated. She testified that the visibility "wasn't a hundred percent good, but it wasn't poor, poor," opining that she would not have been able to see people through the window if visibility was still poor. Eventually, she and Jerry were both transported to a hospital by ambulance.

Broc Edward Smith and Roger Tobias were also involved in the pileup. Smith testified that the snow stopped three or four minutes after he struck a vehicle in front of him, at which time

---

[3] Much of the testimony focused on the nature of Jerry's injuries, which are not at issue in this appeal and will not be discussed. Suffice to say Jerry was seriously injured and had substantial permanent health problems as a result of the accident.

he saw people on the embankment and Jerry already lying in the road. Tobias testified that during the two hours he spent at the scene, the visibility "would come and go," and although it "got a little bit better," the visibility remained poor.

Detective Chris Emerick, Officer Kevin Kane, and Officer Matthew Kling were among the law enforcement personnel who responded to the accident and each provided trial testimony. Kane arrived first, having been only about five minutes away from the scene when he was dispatched; he explained that visibility was clear where he was at the time, but conditions worsened as he approached the crash site. At the scene, he found visibility conditions varied from being able to see no more than a couple of feet beyond his police car to being able to see up to 50 feet ahead. He noted that it was snowing hard but that occasionally the snow would let up. He agreed that he did not know what the conditions were at the time plaintiffs' car was hit. Kling arrived later, and he agreed that the roads were largely clear until approximately half a mile from the accident scene where he encountered whiteout conditions. He slowed down to approximately five miles an hour and did not know he had arrived at the accident scene until he saw Kane's vehicle's emergency lights from approximately 50 feet away. Emerick "did not arrive until probably 30 to 45 minutes after the crash happened," at which time visibility was "pretty limited." The officers agreed that visibility conditions fluctuated during their time at the scene.

Following the close of proofs, the trial court agreed with plaintiffs to instruct the jury regarding the rear-end collision statute, MCL 257.402(a), under which a driver who rear-ends another driver is presumed to be negligent. Over defendant's objection, the trial court declined to instruct the jury regarding the sudden-emergency doctrine, reasoning that although there was conflicting evidence as to the visibility when the unknown driver struck plaintiffs' car, there was no evidence as to the speed he or she had been driving, his or her attentiveness to conditions, or any actions he or she took to avoid the crash. Further, the officers' testimony indicated that the poor visibility began a half mile before the crash site which allowed time to slow down and pull over before reaching the site. Accordingly, even if visibility had not improved by the time that the unknown driver approached, it would be speculative for the jury to conclude that the striking driver's actions did not contribute to the accident. The trial court more fully explained its ruling in its opinion denying defendant's motion for new trial, stating:

> The determination as to whether a jury instruction is applicable and accurately provides the law is within the discretion of the trial court. *Szymanski v Brown*, 221 Mich App 423, 430; 562 NW2d 212 (1997). "Jury instructions should not omit material issues, defenses, or theories that are supported by the evidence." *Ward v Consolidated Rail Corp*, 472 Mich 77, 83-84; 693 NW2d 366 (2005). A defendant is entitled to have a jury instruction on a defense that is supported by the evidence. *People v Mills*, 450 Mich 61, 81; 537 NW2d 909 (1995). However, it is error to submit to the jury an instruction or an issue not sustained by the evidence. *Jaworski v Great Scott Supermarkets, Inc*, 403 Mich 689, 697; 272 NW2d 518 (1978).

> The sudden emergency doctrine applies when a collision is shown to have occurred as the result of a sudden emergency not of the defendant's own making. *White v Taylor Distributing Co, Inc*, 482 Mich 136, 139-140; 753 NW2d 591(2008). When a person faces a sudden emergency "it does not create an

invitation to act in a negligent manner; rather, due consideration is given to the circumstances involved." *White v Taylor Distributing Co, Inc*, 275 Mich App 615, 623; 739 NW2d 132 (2007), aff'd 482 Mich 136; 753 NW2d 591 (2008). The sudden emergency instruction should be given whenever there is evidence to conclude that an emergency existed within the meaning of the sudden emergency doctrine. *Vsetula v Whitmyer*, 187 Mich App 675, 681; 468 NW2d 53 (1991). The defense of sudden emergency "must fail if the sudden emergency results from the defendant's own negligence." *Coon v Williams*, 4 Mich App 325, 337; 144 NW2d 821 (1966).

In this case, the sudden emergency doctrine would need to be viewed from the perspective of the unknown hit and run driver. There was no testimony or other evidence presented at trial regarding the specific actions of this driver. Not only is the hit and run driver unidentified, but it is also unknown how fast they were driving, whether they were following other vehicles too closely, whether they were distracted or whether they were struck by another vehicle. Further multiple witnesses testified that, around the time of the accident, weather conditions were changing and visibility would come and go. Both Ms. Paul and witness Broc Smith testified that, within minutes of the whiteout that caused the multi-car accident, . . . the whiteout condition ended and visibility significantly improved. The hit and run driver may or may not have been driving in a manner that was reckless, negligent, or significantly at fault for the collision. This court held at trial that, based on the lack of evidence regarding the hit and run driver, to attempt to determine whether the collision was caused by a sudden emergency not of the hit and run driver's own making would be mere speculation. Defendant has failed to show that this ruling was in error.

During closing arguments, both attorneys represented to the jury that the unidentified driver could not possibly have been negligent if the unidentified driver had encountered the same sudden whiteout conditions that plaintiffs had encountered. Plaintiffs argued that the evidence showed the whiteout conditions to have abated by the time of the second collision. Defendant argued that to the extent the whiteout conditions improved, they did not do so until after Jerry had been struck.

The jury returned a verdict unanimously in favor of plaintiffs. The amount of the jury's verdict exceeded the policy limits of the parties' insurance policy, so plaintiffs moved for entry of a verdict in the amount of the limits of the policy, i.e., $500,000, plus an additional 12% per year penalty interest pursuant to MCL 500.2006(4), which is part of the Uniform Trade Practices Act (UTPA), MCL 500.2001 *et seq*. The trial court denied plaintiffs' request on the ground that plaintiffs did not assert a UTPA claim in their complaint. The trial court resolved several other matters, including the denial of defendant's motion for a new trial, and this appeal followed.

## II. LAW OF THE CASE

As an initial matter, we reject defendant's argument that the trial court was obligated to instruct the jury regarding the sudden-emergency doctrine pursuant to our decision in *Paul II*.[4]

Under the law-of-the-case doctrine, "if an appellate court has passed on a legal question and remanded the case for further proceedings, the legal questions thus determined by the appellate court will not be differently determined on a subsequent appeal in the same case where the facts remain materially the same." *CAF Investment Co v Twp of Saginaw*, 410 Mich 428, 454; 302 NW2d 164 (1981). A mere determination on appeal that there are factual questions precluding summary disposition does not constitute a legal determination of the substantive merits of an issue. *Brownlow v McCall Enterprises, Inc*, 315 Mich App 103, 111-113; 888 NW2d 295 (2016).

In *Paul II*, the trial court had granted summary disposition to plaintiffs on the basis that Joanne's affidavit was the only evidence before it "regarding the weather conditions at the time the hit-and-run driver struck plaintiff's vehicle." *Paul II*, unpub op at 2. We reversed, reasoning as follows:

> When the resolution of a case rests solely on the credibility of testimony offered by a witness, summary disposition is inappropriate because a jury question necessarily exists. Ultimately, it is the jury's job—not the job of the trial court or of this Court—to assess whether the account of the weather and visibility conditions given by plaintiff's wife is true.
>
> Even accepting the statements made by plaintiff's wife in the affidavit as true, opposing inferences could still be drawn regarding the weather and visibility conditions at the time of the accident, given the testimony of other witnesses that the conditions were rapidly changing and the events involved in the multi-vehicle accident happened quickly. Because there is other evidence in the record from which opposing inferences could be drawn, a question of fact necessarily exists, and the trial court erroneously granted summary disposition in favor of plaintiff.
>
> . . . . Even if not wholly inconsistent with her earlier deposition testimony, it remains that Farm Bureau has not had the opportunity to test the recollection of plaintiff's wife as stated in the affidavit by cross-examination. [*Id*. at 4.]

As this excerpt makes clear, we held in *Paul II* that the trial court erred by granting summary disposition solely on the basis of an affidavit regarding the conditions from a witness whom the jury could choose to disbelieve and whom defendant was entitled to test on cross-examination. *Id*. Significantly, we did not decide—either explicitly or implicitly—whether the jury should be instructed on the sudden-emergency doctrine, which is a decision commonly made based on the evidence presented at trial. Accordingly, defendant extrapolates *Paul II* too far by reading into it a directive to instruct the jury regarding the sudden-emergency doctrine. The trial

---

[4] "Whether the law of the case doctrine applies is a question of law that we de novo." *Shade v Wright*, 291 Mich App 17, 21; 805 NW2d 1 (2010).

court's decision to not give the instruction was not a violation of any ruling by this Court on prior appeal.

### III. SUDDEN-EMERGENCY DOCTRINE

Defendants argue that the trial court abused it discretion by declining to give the sudden-emergency instruction to the jury. Given the evidence—and lack of evidence—presented at trial, we disagree and conclude that the trial court did not abuse its discretion.

We review for an abuse of discretion a trial court's determination whether a particular jury instruction is applicable to the case. *Moore v Detroit Entertainment, LLC*, 279 Mich App 195, 223; 755 NW2d 686 (2008); *Stevens v Veenstra*, 226 Mich App 441, 443; 573 NW2d 341 (1997). An abuse of discretion occurs when a trial court makes a decision that falls "outside the range of reasonable and principled outcomes." *Ronnisch Constr Group, Inc v Lofts on the Nine*, LLC, 499 Mich 544, 552; 886 NW2d 113 (2016).

"In a negligence action, . . . the standard of care required is always the care which a person of reasonable prudence would exercise under the circumstances as they existed." *Antcliff v State Employees Credit Union*, 414 Mich 624, 631-632; 327 NW2d 814 (1982). "The doctrine of sudden emergency is a logical extension of the reasonably prudent person rule, and as such is not an affirmative defense." *Szymborski v Slatina*, 386 Mich 339, 341; 192 NW2d 213 (1971) (quotation marks, citation, and emphasis omitted). The doctrine applies "when a collision is shown to have occurred as the result of a sudden emergency not of the defendants' own making." *Vander Laan v Miedema*, 385 Mich 226, 231; 188 NW2d 564 (1971). The emergency must be both "unusual," usually pertaining to some kind of weather phenomenon, and "unsuspected," meaning it had not been visible for any useful length of time and was entirely unexpected. *Id*. at 232. "[T]he test to be applied is what that hypothetical, reasonably prudent person would have done under all the circumstances of the accident, whatever they were." *Baker v Alt*, 374 Mich 492, 496; 132 NW2d 614 (1965). Critically, the sudden-emergency doctrine is unavailable if the driver "in any manner negligently contributed to causing the 'emergency' " or if the driver failed to make "proper and reasonable use of his senses under the circumstances that had been testimonially described." *Id*. at 497.

There is no serious dispute in this case that the whiteout conditions encountered by plaintiffs satisfied the definition of a "sudden emergency." But the trial court concluded that evidence was speculative both as to (1) what the weather conditions were at the exact moment the unknown driver struck plaintiffs' vehicle, and (2) what actions the unknown driver took before colliding with plaintiffs' vehicle.

We conclude that there was a reasonable basis for the trial court's decision to not give the sudden-emergency instruction. The evidence at trial showed that the weather conditions fluctuated around the time of the accident. Witnesses testified that at times, there was almost no visibility but that at other times, visibility cleared up substantially. Joanne was the sole witness who testified about the conditions at the exact moment of the crash, and she testified that after plaintiffs' car struck the one in front of them, they "sat there for a few minutes and . . . the snow let up," such

that she could see the cars and people walking around on the highway. She testified that the improved visibility occurred *before* her husband left their vehicle, i.e., before the unidentified vehicle struck plaintiffs' car from behind. As we noted in our prior opinion, the jury was not required to accept this testimony as true. See *Kelly v Builders Square, Inc*, 465 Mich 29, 39; 632 NW2d 912 (2001). Defendant had an opportunity to fully cross-examine Joanne and to discredit her testimony, but the jury found her testimony credible. Moreover, there was no testimony supporting the contrary conclusion that whiteout conditions were present at the moment the unidentified driver struck plaintiffs' vehicle. The police officers who testified were not on scene when the accident occurred. Tobias testified about the whiteout conditions that preceded his collision, but there is no basis in the evidence to determine when this occurred relative to plaintiffs' vehicle being rear-ended.

Defendant relies on Smith's testimony that when visibility approved about three or four minutes after his crash, he was able to see Jerry lying in the roadway. Defendant argues that it can be inferred from this that Jerry was struck during the period of non-visibility that coincided with Smith's crash. However, as noted with respect to Tobias's testimony, there was no evidence establishing when Smith's crash occurred relative to the unidentified driver striking plaintiffs' vehicle. While it is possible that the unidentified driver faced whiteout conditions before striking plaintiffs' vehicle, the court concluded that there was insufficient evidence presented for the jury to reach that conclusion without resorting to speculation. The jury may not construct facts out of pure speculation to sustain a particular verdict. See *Conley v McDonald*, 40 Mich 150, 155-159 (1879).

Equally significant to the trial court's decision was its determination that it would be entirely speculative for the jury to conclude that the unknown driver acted reasonably even if confronted with severe conditions because there was no evidence of the specific actions taken by that driver. To be clear, there was absolutely no evidence as to the driver's speed, whether he or she was distracted, whether he or she had been following too closely and whether he or she promptly slowed down upon confronting the poor visibility. In the absence of such evidence, there was no basis for the jury to conclude that the unidentified driver made "proper and reasonable use of his senses under the circumstances that had been testimonially described."[5] *Baker*, 374 Mich at 497. Notably, defendant does not identify any caselaw applying the sudden-emergency doctrine where the identity of the striking driver is unknown. It appears that in all the cases cited, the striking driver was available to testify as to the conditions specifically encountered and the actions he or she took.

Under these circumstances, the trial court did not abuse its discretion by declining to instruct the jury on the sudden-emergency doctrine. We further conclude, however, that even if the trial court did err by not giving the instruction, reversal is not warranted because the question of the weather conditions encountered by the unknown driver was sufficiently presented to the jury.

---

[5] Indeed, a lack of reasonable care could be inferred by the failure of the striking driver to stop and identify him or herself to plaintiffs or the police.

Erroneous instructions do not require reversal unless the parties' theories were not "adequately and fairly presented to the jury" and affirmance "would be inconsistent with substantial justice." *Case v Consumers Power Co*, 463 Mich 1, 6; 615 NW2d 17 (2000). Reversal on the basis of instructional error is warranted where "the result might well have been different." *Rouse v Gross*, 357 Mich 475, 482; 98 NW2d 562 (1959). See also *Gapske v Hatch*, 347 Mich 648, 659; 81 NW2d 337 (1957).

The jury was instructed that the determination whether or not the unidentified driver was negligent must be based "under the circumstances you find existed . . . in this case." A review of the trial transcript reveals that through the entirety of the trial, defendant presented its theory that the unidentified driver should be found not negligent because of the weather. Even plaintiffs' attorney told the jury that plaintiffs would have no claim if the unidentified driver encountered the same whiteout conditions that they did. Specifically, plaintiffs' attorney stated in closing argument that "if the vehicle that ran into the—the Paul vehicle, the unknown vehicle, was confronted by a whiteout and then ran into [plaintiffs' vehicle] we wouldn't be here . . . [t]hat's not negligence, you can't avoid that." Defendant argues that the jury was free to disregard any statements made by the lawyers regarding defendant's theory of the case because it was instructed that the lawyers' arguments are not evidence and that it should base its decisions only on the evidence and the instructions given by the trial court. The question, however, is not whether the lawyers' statements were construed by the jury as evidence but whether defendant's theory of the case was adequately presented to the jury. In any event, much of the testimony throughout the case focused on the extent to which visibility conditions differed between the time of the first collision and any time thereafter. It is therefore extraordinarily likely that the jury was aware that both parties attached great significance to the actual weather conditions at the moment of the second collision.

Defendant also argues that the lack of the sudden-emergency instruction was prejudicial because plaintiffs were relying on a violation of "the rear-end collision statute," MCL 257.402(a), to create a presumption of negligence. This statute was given to the jury for consideration and provides in relevant part:

> [W]hen it is shown by competent evidence, that a vehicle traveling in a certain direction, overtook and struck the rear end of another vehicle proceeding in the same direction, or lawfully standing upon any highway within this state, the driver or operator of such first mentioned vehicle shall be deemed prima facie guilty of negligence. [MCL 257.402(a).]

Defendant does not argue that this instruction was in error as it accurately stated the law. Plaintiffs were entitled to such a presumption and it was up to the jury to determine if the presumption applied and whether it had been rebutted. The trial court did not instruct the jury that it must find the unidentified driver negligent because he or she rear-ended plaintiffs' car. Rather, the court told the jury that it "*may* infer that the hit and run driver was negligent" if it found that the unidentified driver violated the rear-end collision statute. (Emphasis added). Accordingly, the jury understood that the violation of the rear-end collision statute created a rebuttable presumption of negligence and that it was not obligated to find the unidentified driver negligent based on the statutory violation. Defendant introduced evidence that the rear-end collision statute might not even have applied, and both attorneys emphasized to the jury that if the presumption applied, it still needed to determine whether the unidentified driver was free from negligence. The jury was

fully and properly instructed on negligence and causation, and, for the reasons discussed, the jury was informed that this determination hinged on the weather conditions at the time of the second collision.

Under these circumstances, we conclude that defendant has not established that "the result might well have been different" had the sudden-emergency instruction been given, *Rouse*, 357 Mich at 482, or that affirmance "would be inconsistent with substantial justice," *Case*, 463 Mich at 6. Accordingly, even if instructional error occurred, reversal is not warranted.

## IV. PENALTY INTEREST

On cross-appeal, plaintiffs argued that the trial court erroneously concluded that plaintiffs were not entitled to interest under MCL 500.2006. We agree.[6]

MCL 500.2006 provides in relevant part: [7]

(1) A person must pay on a timely basis to its insured, a person directly entitled to benefits under its insured's insurance contract, or a third party tort claimant the benefits provided under the terms of its policy, or, in the alternative, the person must pay to its insured, a person directly entitled to benefits under its insured's insurance contract, or a third party tort claimant 12% interest, as provided in subsection (4), on claims not paid on a timely basis. Failure to pay claims on a timely basis or to pay interest on claims as provided in subsection (4) is an unfair trade practice unless the claim is reasonably in dispute.

* * *

(4) If benefits are not paid on a timely basis, the benefits paid bear simple interest from a date 60 days after satisfactory proof of loss was received by the insurer at the rate of 12% per annum, if the claimant is the insured or a person directly entitled to benefits under the insured's insurance contract. If the claimant is a third party tort claimant, the benefits paid bear interest from a date 60 days after satisfactory proof of loss was received by the insurer at the rate of 12% per annum if the liability of the insurer for the claim is not reasonably in dispute, the insurer

---

[6] The interpretation and application of statutes, rules, and legal doctrines is reviewed de novo. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008). The applicability of a particular statute for purposes of calculating interest on a judgment is also reviewed de novo as a question of law. *Yaldo v North Pointe Ins Co*, 457 Mich 341, 344; 578 NW2d 274 (1998). The adequacy of a party's pleadings is reviewed de novo. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 229; 964 NW2d 809 (2020).

[7] A slightly different version of this statute was in effect at the time of the accident, pursuant to 2004 PA 28. Since then, the statute was amended by 2016 PA 276, effective July 1, 2016, and 2017 PA 223, effective December 20, 2017. The changes to the statute were entirely stylistic, so we will refer to the current version of the statute.

has refused payment in bad faith, and the bad faith was determined by a court of law.

The Supreme Court has explained that, pursuant to the above statutory provisions, an insured is per se entitled to the statutory interest if the insurer does not pay a claim in a timely manner; the "reasonably in dispute" language applies only to third-party claimants rather than to the insured. *Nickola v MIC Gen Ins Co*, 500 Mich 115, 123-125; 894 NW2d 552 (2017). Importantly, the "class of claimants who are insureds *or* an individual or entity directly entitled to benefits under an insured's insurance contract" are entitled to the interest irrespective of whether the claim is reasonably in dispute. *Id*. at 124 (emphasis added). In other words, within that class, there is a distinction between "the insured" and "a person directly entitled to benefits." *Id*. at 126. Furthermore, "[t]he insured by definition is a party to the insurance contract, not a third party." *Id*. at 127. Therefore, there can be no dispute that Jerry is an "insured," so defendant's argument regarding whether he might or might not be "directly entitled to benefits" is entirely irrelevant.

Defendant observes that the interest provision is intended to punish insurance companies for dilatory practices. *Yaldo*, 457 Mich at 348. It therefore argues that it should not be deemed dilatory when there existed legitimate questions whether plaintiffs' claim was actually meritorious. As a practical matter, this argument would bring a "reasonably in dispute" exception in "through the back door." This Court is bound to follow precedent from our Supreme Court. *Pellegrino v AMPCO Sys Parking*, 486 Mich 330, 352-354; 785 NW2d 45 (2010). Pursuant to that precedent, the Legislature has determined that insurers are only entitled to withhold payment without fear of incurring the penalty as to third-party claimants. Because Jerry is an insured rather than a third-party claimant *or* "a person directly entitled to benefits," and defendant did not pay plaintiffs' claim in a timely manner (presuming defendant received satisfactory proof of loss), defendant is obligated to pay the 12% interest if plaintiffs prevail in their case.

Therefore, the only issue is whether plaintiffs were required to advance a specific claim under the UTPA, or at least to cite specifically to MCL 500.2006(4), in their complaint. As plaintiffs point out, they did specifically ask for "interest" in addition to a $500,000 judgment against defendant. Plaintiffs did not mention the statute or the UTPA, however, in Michigan, the pleadings must sufficiently inform the opposing party of the nature of a claim or defense to allow the opposing party to respond in a meaningful way. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 229-232; 964 NW2d 809 (2020). Significantly, however, no private claim exists under MCL 500.2006. *Young v Mich Mut Ins Co*, 139 Mich App 600, 604-606; 362 NW2d 844 (1984).[8] Rather, MCL 500.2006(4) is a statutory penalty that imposes damages under certain circumstances. *Commercial Union Ins Co v Liberty Mut Ins Co*, 426 Mich 127, 136 n 5; 393 NW2d 161 (1986). "The statute is intended as a penalty to be assessed against insurers who procrastinate in paying meritorious claims in 'bad faith'. . . . [I]t evinces no intent to compensate a plaintiff for the delay in recovering funds rightfully his." *Medley v Canady*, 126 Mich App 739, 743-744; 337 NW2d

---

[8] Although published decisions of this Court issued prior to November 1, 1990, are not strictly binding on us, all published decisions of this Court are precedential under the rule of stare decisis pursuant to MCR 7.215(C)(2) and generally should be followed. *In re Guardianship of Bazakis*, ___ Mich App ___, ___ n 4; ___ NW2d ___ (2022) (Docket No. 358276); slip op at 5 n 4.

-10-

909 (1983). Thus, statutory penalty interest under MCL 500.2006(4) is not a "claim" that could be alleged in a complaint, and at least under the undisputed facts of this case, no conceivable defense could exist other than prevailing in the substantive UIM claim. The trial court erred by concluding that the penalty interest was unavailable to plaintiffs because they failed to cite the statute specifically or bring a claim under the UTPA.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. Plaintiffs may tax costs as the prevailing party. MCR 7.219(A).

/s/ Douglas B. Shapiro
/s/ Anica Letica
/s/ Kathleen A. Feeney